## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA

Chris Okoli,                              )
     Plaintiff,                         )
                      )     CIVIL ACTION No. **1 : 1 8CV 29 4**
     vs.                                )
                        )
Michelin North America, Inc. –            )    **<u>JURY TRIAL DEMANDED</u>**
BF Goodrich                               )
     Defendant                          )

### COMPLAINT

Plaintiff, Chris Okoli ("Chris" or "Plaintiff"), by and through his undersigned counsel, files the following Complaint against Defendant, Michelin North America – BF Goodrich ("Michelin" or "Defendant") and avers as follows:

### Jurisdiction and Venue

1. This action arises in part under 42 U.S.C. §2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. Jurisdiction over Plaintiff's claims is conferred on the Court by 28 U.S.C. §§1331 and 1343.

3. Venue in this District is proper under 28 U.S.C. §1391(b).

4. Plaintiff demands a trial by jury of all issues so triable.

### The Parties

5. Plaintiff is an adult individual, who resides 12621 Braveheart Drive, Fort Wayne, IN 46814.

6. Plaintiff is a black male from Nigeria and so, is a member of multiple a protected class.

7. Defendant is a corporation with a principal place of business at 1 Parkway South, Greenville, SC 29615.

### Exhaustion of Remedies

8. Plaintiff timely filed charges of discrimination based on race and national origin, with the Equal Employment Opportunity Commission ("EEOC"), Indianapolis office, alleging discrimination under Title VII, as amended. The EEOC charge number is 24D-2018-00085.

### Facts

9. Plaintiff was employed full-time as a Workshop Quality Technician by Defendant from or about May 2015 to March 16, 2018, when his employment was terminated.

10. Plaintiff was one of the only few employees of African ancestry or of direct African national origin at or about his level at his worksite.

11. During his employment at Defendant, Plaintiff was the recipient of many statements or conduct directed at him because of his national origin that served to foster a hostile working environment.

12. For example, on or about June 15, 2017, Plaintiff was in a group of fellow employees when, as part of the of the conversation, he mentioned purchasing a house he planned on renovating. Angrily, Kevin Biddle ("Biddle") replied that "you fucking Africans come to this country to buy up our properties." The group included Paul McCarren ("McCarren") and Dennis Sperry ("Sperry"). Sperry was Biddle's supervisor while McCarren was the supervisor of another crew that Biddle sometimes

worked with, but neither of them corrected or reprimanded Biddle. Rather, to Plaintiff's embarrassment, the group members laughed at Biddle's comment. Sperry and McCarren were both level M employees, while Plaintiff was a level N employee, a step lower than them.

13. For a period, Biddle never referred to Plaintiff by name, either referring to him with animal sounds or gesturing to him. He mocked Plaintiff's accent in the present of others, and made statements such as "you this black foreign accent guy, when are you gong back to your country?". He called Plaintiff names such as "Monkey", "African", "desert looking" and "colored man."

14. Another incident occurred in late September 2017, when Plaintiff was walking past 4 operators and one of them, Brian Birly ("Birly"), said "hey guys, here comes the dumb ass behind you." The rest of the group looked back, saw Plaintiff and started to laugh. Birly repeated a similar line until Plaintiff was out of sight. Plaintiff reported this to McCarren, Birly's supervisor. However, Birly never approached Plaintiff to apologize and continued displaying similar behaviors.

15. Sometime in September 2017. Plaintiff was eating lunch at his desk when McCarren asked him if there was fish in the food, to which Plaintiff replied "yes." As soon as Plaintiff finished his response, Daniel Peters ("Peters"), a level N employee, said "that food smells like shit." Once again, just like in the Biddle instance, McCarren did not correct or reprimand Peters.

16. Peters also mocked Plaintiff's accent in meetings and made inappropriate jokes about his age, especially in meetings held by David Krupa ("Krupa"), who in the

hierarchy was the supervisor of Plaintiff's direct supervisor. Krupa was essentially the manager of Plaintiff's department. He generally treated Peters with preference.

17. Krupa had a lengthy history of inappropriate behavior towards Plaintiff. For example, on Nov 2, 2016, he called Plaintiff a "dumb ass" during a meeting because Plaintiff asked him a question. Other people were present at the meeting such as Robert Livingstone ("Livingstone"), Paul McCarren, Dennis Sperry and several non-salaried employees. Nobody said anything to correct Krupa's behavior. After the meeting, Plaintiff was stopped by multiple non-salaried employees and asked how he could permit his boss to treat him in such a manner. Plaintiff reported the name calling to James Irving of HR but if anything was done about it, it had no effect on Krupa's conduct towards Plaintiff.

18. For example, about two weeks later, in yet another meeting, Plaintiff indicated multiple times by raising his hand at various points during the meeting that he wanted to contribute to the discussions, but Krupa intentionally ignored him each time, even going as far as calling on people that had no idea of the situation/matter being discussed. At the tail end of the meeting, Livingstone diplomatically mentioned that it would be good to hear what Plaintiff had to contribute, so Krupa had no choice but to permit Plaintiff to speak. Plaintiff estimate that in the meeting which lasted for about 40 minutes, he had his hand up for about10 minutes in total.

19. Another example of Krupa's attempt to humiliate Plaintiff occurred in April 2017. Plaintiff was five minutes late to a meeting because of something that came up with a project execution and he was asked by another boss to assist in fixing it. Before Plaintiff could explain to Krupa, Krupa essentially took him to the cleaners, angrily

berating him. Subsequently, two Caucasian employees, Greg Bahr and Dan Kuczek, arrived at the meeting later than Plaintiff, but Krupa did not say anything about their late arrival. After the meeting, Kevin Kranner approached Plaintiff and said that Krupa should not be humiliating Plaintiff like that and commiserated with Plaintiff that Plaintiff had to go through such things.

20. Plaintiff talked to his recruiter about Krupa's, Bonnie Turner, who advised him to contact Bee-Line and report it. Plaintiff did so and the report came to the attention of Mark Brown ('Brown"). Brown is the head of personnel management/service for Plaintiff's work site. He claimed to do an investigation and that Plaintiff was at fault for Krupa's harassing behaviors towards him.

21. Plaintiff alleges that almost from the time he was hired, he had to deal with questions questioning his immigration status, what he is doing in the USA, why he thought he could "fit in here". These questions were always posed in a negative manner.

22. Plaintiff also alleges that his supervisor, Adrian Gropengieser ("Adrian"), treated him differently because of his race and/or national origin. For example, she condescendingly told him that she did not care how an employee they were to meet with treated Plaintiff in the meeting, that in fact she did not care how other employees acted towards him if she did not supervise them directly.

23. On at least one occasion, Adrian wrote Plaintiff up based on complaints without ever hearing his side of the story. For example, he turned in paperwork regarding a change he made on October 20, 2017 (Friday) on October 23 (Monday) because the person he was to submit it to, Kelli, had left for the weekend. He had informed

Kelli prior to making the changes and she instructed him to turn in the documentation after he made the changes. On October 24, Adrian gave him a written reprimand she had prepared without asking him his side of the story. Plaintiff alleges that there were other Caucasian employees that turned in similar paperwork late without being disciplined in the same manner that he was.

24. Plaintiff was repeatedly berated by Adrian, such that on November 10, 2017, he sent an email to Robert Livingstone, David Krupa and Paul Zanderski about a specific instance where she turned a conversation he was having with another employee into his fault and wrote him up. In the email, he identified how he felt he was being abused at work and this had served to make him nervous and afraid to go to work daily. Though a representative of the human resources department spoke with Plaintiff about this, nothing appeared to have been done about it.

25. In approximately July 2017, Plaintiff was disciplined for allegedly making incorrect changes to a step table and causing additional time to be added to the processing time. Peters, a Caucasian, had made changes with similar results and he was not disciplined.

## COUNT I – DISCRIMINATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e

26. Claimant incorporates paragraphs 1 through 25 herein as if fully set forth.

27. Defendant discriminated against Plaintiff in the terms, conditions and privileges of his employment because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

28. Plaintiff was subject to adverse employment action as a result of the discrimination.

29. Plaintiff was also subjected to pervasive harassing conduct due to his national origin and race by non-supervisory and supervisory employees (either directly or the supervisory employees failed to take prompt and corrective actions with regard to the harassing conduct/statements.

30. Plaintiff was deeply embarrassed by the discriminatory actions so much so that he dreaded going to work.

31. The harassment that Plaintiff faced was pervasive and severe enough that it would have equally distressed a reasonable member of his protected class.

32. The harassers were acting in their scope of employment and work when

33. Defendant's violation of Title VII was undertaken with malice or reckless indifference to his federally protected right to not be discriminated against because of his race or national origin.

34. As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish, embarrassment, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff respectfully demands as follows:

    a.     That a final judgment in favor of Plaintiff and against Defendant.

    b.     That Plaintiff be granted compensation for all pain and suffering, including emotional pain, mental distress, suffering, inconvenience,

mental anguish, embarrassment, loss of enjoyment of life, and other non-pecuniary losses.

c.    That Plaintiff be awarded the costs and expenses of this action, including all reasonable attorneys fee as provided by statutes;

d.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper; and

Respectfully submitted,