UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHRIS OKOLI, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Cause No. 1:18-CV-294-HAB |
| MICHELIN NORTH AMERICA, INC. - BF GOODRICH, | ) ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Chris Okoli ("Okoli") was terminated from his employment with Defendant Michelin North America, Inc. – BF Goodrich ("Michelin") in March 2018. Okoli filed suit against Michelin claiming that his firing was racially motivated, was in retaliation for his complaints of racial harassment, and that Michelin fostered a hostile work environment. Michelin now moves for summary judgment on all Okoli's claims. Okoli has abandoned his wrongful termination and retaliation claims but asserts that his hostile work environment claim must proceed to a jury. The Court finds that Okoli has designated enough facts to survive summary judgment.

**A.      Factual Background**

**1.      *Okoli's "Diary"***

In support of his response, Okoli filed his Appendix in Support of Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 50-1). The Appendix contains three exhibits, the second of which Okoli describes as a "diary of sorts." (ECF No. 50 at 4). He claims that he used the diary "to unburden himself and retain his sanity because of what he experienced at work." (*Id*.). This description is misleading at best and dishonest at worst.

Anyone hearing the word "diary" would assume, quite reasonably, that referenced exhibit was drafted by Okoli. After all, a diary is "a daily record, usually private, *especially of the writer's own experiences, observations, feelings, attitudes, etc.*" https://www.dictionary.com/browse/diary (emphasis added). Okoli's brief certainly does nothing to disabuse anyone of this notion; the response repeatedly uses phrases like "[Okoli] began the diary," "[Okoli] stated," and [Plaintiff] expressed his dismay." (ECF No. 50 at 4). After reviewing Okoli's response, the Court assumed that the diary was what it purported to be: Okoli's contemporaneous accounting of his experiences while working for Michelin.

Au contraire! Only after reading Michelin's reply was the Court aware that the "diary" was drafted by Okoli's former counsel, Olanrewaju Kukoyi. It matters little, for the purposes of admissibility, that Attorney Kukoyi claims that the information in the "diary" was from Okoli. (*See* ECF No. 55 at 3). Such statements would still fall under the ambit of Federal Rule of Evidence 805, which requires that hearsay within hearsay may be admitted only if there is an exception for each "layer" of hearsay. *See* Fed. R. Evid. 805. Okoli offers no hearsay exception for any layer of hearsay here. Indeed, if Attorney Kukoyi was called by Okoli as a witness at trial, the Court would not allow him to "relate rank hearsay in the form of out-of-court statements made by an interested party and in reasonable anticipation of ensuing litigation." *Stolarczyk ex rel. Stolarczyk v. Senator Inter. Freight Forwarding, LLC*, 376 F.Supp.2d 834, 839 (N.D. Ill. 2005).

Simply put, the "diary" is hearsay, and a court must disregard evidence that constitutes hearsay at the summary judgment stage. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 874 n. 3 (7th Cir. 2005) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996)); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial ... except that

2

affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed . . . provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live."). Therefore, the "diary" will not be considered in ruling on Michelin's motion for summary judgment.

**2.     *Okoli's Declaration***

In addition to the diary, Michelin also objects to a Declaration submitted by Okoli in opposition to the summary judgment. Michelin claims that the declaration is "improper because Okoli cites additional 'facts' not previously testified to at his deposition." (ECF No. 55 at 4).

Michelin appears to be invoking the so-called sham affidavit doctrine. The rule against sham affidavits provides that an affidavit is inadmissible when it contradicts the affiant's previous sworn testimony unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse. *See*, *e.g*., *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). The rule is designed to avoid sham factual issues and prevent parties from taking back concessions that later prove ill-advised. *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016). The Seventh Circuit has emphasized that the rule is to be used with "great caution." *Id*. Thus, where the change is plausible or the party offers a suitable explanation for the change, the changes in testimony go to the witness' credibility rather than admissibility. *Id*.

The problem with applying the sham affidavit rule here is that Michelin has not identified any testimony that the declaration contradicts. Okoli may have added allegations in his declaration that he did not testify to at his deposition, but that does not make the declaration a sham. In the absence of a more thoroughly fleshed out argument by Michelin, the Court will consider the declaration in ruling on the motion for summary judgment.

3

3.      *The Alleged Hostile Work Environment*

Okoli, born in Nigeria, began employment in 2015 at Michelin's Woodburn, Indiana, plant. He was employed as a Workshop Quality Technician, and was responsible for quality planning for products, materials, processes and methods, as well as delivering products manufactured in compliance with Michelin's standards. From the beginning of his employment until early 2017, Okoli had several male supervisors, including David Krupa ("Krupa"). From March 2017 until his termination, he was supervised by Adrian Gropengieser ("Gropengieser"), a woman.

In his deposition, declaration, or both, Okoli testified to several instances of boorish behavior by Michelin employees. Some of that conduct came from his supervisors. In September 2016, Krupa and Daniel Peters, Okoli's co-worker, made fun of Okoli's Nigerian accent. In November of the same year, Krupa called Okoli a "dumb ass" at a department meeting. In April 2017, Krupa singled out Okoli for being late to a meeting despite several Caucasian employees also being late to the same meeting. On another occasion, Krupa asked Okoli if he could return to the United States if he went back to Nigeria to visit.

Okoli concedes that Krupa's behavior improved after a May 2017 meeting between the two men and Michelin's HR department. However, Okoli believes that Krupa simply delegated the poor behavior to Krupa's subordinates and Okoli's coworkers. Specifically, two men, Bryan Birly and Kevin Biddle, regularly directed invectives in Okoli's direction, including: fucking dumb ass, fucking moron, fucking cunt, fucking foreign accent guy, goat face, and asshole. Biddle's alleged conduct is particularly worthy of reproach. Biddle repeatedly made animal noises in reference to Okoli, including gorilla, lion, and monkey noises. In June 2017, upon learning that Okoli had purchased a home, Biddle accosted Okoli, stating: "You fucking foreigners come to our country and buy up all our properties, when will all of you go back to your country?" Biddle would

also ask Okoli questions like: "When are you going back to your country?", "Where did you go to school?", and "You guys still sleep with monkeys in your country and live in hut houses, right?"

Gropengieser's alleged conduct seems benign in comparison. She once called Okoli a "girl" upon learning that he drank Smirnoff vodka. Gropengieser asked Okoli's coworkers to report on his work performance, and further instructed them not to help Okoli with his work or "cover" for him any longer.

Okoli allegedly faced other incidents of harassment. In September 2017, Daniel Peters, Okoli's coworker, remarked that his traditional Nigerian lunch smelled like "shit." On several occasions, Okoli would return to his desk only to find that his chair had been tampered with, either by someone removing parts or spreading a substance on the seating area. Okoli also claimed that his computer was tampered with while he was away from his desk; when Okoli would go to get help resolving the computer issue, it would be fixed upon his return.

Okoli filed formal complaints with Michelin on multiple occasions. He filed complaints about Krupa in 2016 and 2017, and against Gropengieser in 2017. Michelin investigated all claims and found that they could not be substantiated.

**B.     Legal Discussion**

**1.     *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't*

*of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**2.** *A Genuine Issue of Fact Exists as to Okoli's Hostile Work Environment Claim*

As noted above, Okoli has abandoned his wrongful termination and retaliation claims; judgment in Michelin's favor is, therefore, appropriate on those claims. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (collecting cases). All that remains is Okoli's Title VII claim for a hostile work environment.

Title VII prohibits employers from discriminating against a person with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). Michelin, however, is not liable to Okoli under Title VII for a hostile work environment unless Okoli can prove (1) that his work environment was both

6

objectively and subjectively offensive; (2) that the harassment was based on his race; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability. *See Dear v. Shinseki*, 578 F.3d 605 (7th Cir. 2009); *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002).

Michelin challenges the merits of Okoli's claim in two ways. First, it notes that most of the allegations are not race-based, defeating the second and third requirements. The Court believes that this argument misses the mark. In evaluating a hostile work environment claim, a court must consider the totality of the relevant circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Thus, a court may not consider each alleged incident in isolation. See *Cerros*, 288 F.3d at 1046 (reversing summary judgment for employer in racially hostile environment case where district court had failed to consider multiple incidents in their entirety). Instead, a court must give careful consideration to "the social context in which particular behavior occurs and is experienced by its target," *Id.* at 1046 (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81, (1998)), and to keep in mind that "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." *Id*. (quoting *Oncale*, 523 U.S. at 82); *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 270–71, (2001) ("Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (citations omitted).

When viewed in the context of the workplace Okoli describes, the Court finds that a reasonable jury could believe that all the conduct had a racial purpose. *See Hardin v. S.C. Johnson*

7

*& Son, Inc.*, 167 F.3d 340, 345 (1999) ("The complained of conduct must have either a . . . racial character *or purpose* to support a Title VII claim.") (original emphasis). Take Krupa's conduct; in the abstract, calling someone a "dumbass" is not inherently racial. *Id*. However, when the same person using the insult has also mocked someone's accent and immigration status, the calculus changes. *See Henderson v. Irving Materials, Inc.*, 329 F.Supp.2d 1002, 1009–10 (S.D. Ind. 2004). Similarly, Biddle's insults directed toward Okoli's intelligence are not, in and of themselves, racially tinged. But when one remembers that the same individual called Okoli a "fucking foreigner" and made monkey noises in his direction, the characteristics of Biddle's statements necessarily change. Considering the explicit racist character of several incidents, a reasonable jury could conclude that the superficially neutral incidents were also based on race. *Id*. at 1010.

The same is true when determining whether the alleged conduct is severe or pervasive. To be considered severe or pervasive, the conduct must have been objectively hostile or abusive and must have been subjectively perceived as such. *Harris*, 510 U.S. at 21–22. "[I]solated and innocuous incidents will not support a hostile environment claim." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996); *see also Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) ("'relatively isolated' instances of misconduct that [are] not severe will not support a hostile environment claim").

Certainly, Okoli viewed the alleged conduct as subjectively hostile. He made multiple complaints to Michelin HR and spoke directly to some of the alleged offenders to express his displeasure. A jury would have little problem finding that Okoli was offended by the conduct.

To ascertain whether an environment is objectively hostile or abusive, the court must consider all the circumstances, including the frequency of the discriminatory conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating, or a mere offensive

8

utterance; and whether that conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *Cerros*, 288 F.3d at 1046. In other words, a court must consider the totality of the circumstances, rather than merely considering incidents separately and independently of one another. *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 889 (7th Cir. 2001)

Applying this standard, Okoli's claims are sufficient to survive summary judgment on a hostile work environment claim. *See*, *e.g.*, *Cerros*, 288 F.3d at 1046–47 (reversing summary judgment where plaintiff suffered extensive verbal and other forms of harassment based on ethnicity); *accord*, *White v. BFI Waste Services, LLC*, 375 F.3d 288, 297–98 (4th Cir. 2004) (reversing summary judgments for employers where black employees were called racially derogatory names and were subjected to racially explicit terms of ridicule and opinion); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1118 (9th Cir. 2004) (reversing summary judgment for white plaintiff whose workplace was "polluted" when he was harassed for making friendships that crossed racial lines); *Terry v. Ashcroft*, 336 F.3d 128, 149–50 (2d Cir. 2003) (reversing summary judgment where plaintiff employee's supervisors "purposely harassed" him and made his "life hell on Earth"); *Hawkins v. Groot Indus., Inc.*, 2003 WL 1720069, at *2 (N.D.Ill. Mar. 31, 2003) (several harassing comments by supervisors and co-workers enough for plaintiff to survive summary judgment on hostile work environment claim). Michelin's attempts to minimize its employees' behavior ignores the broader context in which that behavior occurred.

Michelin's second gambit fares no better. Addressing the fourth element of a hostile work environment claim, Michelin claims that there is no basis for employer liability because, it claims, it quickly addressed all Okoli's concerns when they were raised. Thus, Michelin asserts, the alleged bad acts of its employees cannot be imputed to it.

The question whether there is a basis for employer liability depends on whether the alleged harassment was perpetrated by supervisors or coworkers. *See Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004); *see generally Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998). Employers are "strictly liable" for harassment inflicted by supervisors, but they can assert an affirmative defense when the harassment does not result in a tangible employment action. *Williams*, 361 F.3d at 1029 (citing *Ellerth*, 524 U.S. at 756 and *Faragher*, 524 U.S. at 807–08). If only coworkers were culpable for making a work environment hostile, the plaintiff must show that the employer has "been negligent either in discovering or remedying the harassment." *Id.* (internal citations omitted).

The Court finds that Michelin's defense fails on two fronts. First, for the reasons stated above, Michelin is incorrect when it asserts that none of Okoli's supervisors[1] participated in racially charged harassment. Given the totality of the circumstances, a reasonable juror could conclude that all the alleged conduct had a racial purpose, including the more innocuous comments of Krupa and Gropengieser. Similarly, a juror could conclude that Krupa's mocking of Okoli's accent and references to Okoli's immigration status were racial in nature. Michelin, then, is strictly liable for this conduct. Michelin does not argue that the harassment did not result in a tangible employment action, *Williams*, 361 F.3d at 1029, and cannot obtain summary judgment based on the absence of employer liability.

---

[1] Under Title VII, a supervisor is one with "the power to directly affect the terms and conditions of the plaintiff's employment." *Jajeh v. Cty. of Cook*, 678 F.3d 560, 568 (7th Cir. 2012) (quoting *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 848 (7th Cir. 2008)). This power includes "the authority to hire, fire, promote, demote, discipline or transfer a plaintiff." *Id*. There is little evidence in the record on this issue, but Michelin appears to concede that both Krupa and Gropengieser were Okoli's supervisors at different times. (ECF No. 41 at 3, n.5).

Nor is the Court convinced that Michelin could avoid liability even if the harassing conduct was limited to coworkers. Michelin makes much of the fact that it quickly investigated Okoli's formal complaints. Michelin further points out that Okoli did not report many of the actions he now alleges.

To be sure, notice or knowledge of harassment is a prerequisite for establishing employer liability. *Renfroe v. IAC Greencastle, LLC*, 385 F.Supp.3d 692, 707 (S.D. Ind. 2019) (citing *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998)). In determining whether an employer received notice, courts will consider whether a complainant informed a department head or someone that the complainant reasonably believed was authorized to receive and respond to a complaint of harassment. *Id*. However, an employer could be charged with constructive notice where the harassment was sufficiently obvious. *See Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004).

The Court believes, based on the evidence in the record, that a reasonable juror could conclude that the harassment by Okoli's coworkers was sufficiently obvious to put Michelin on notice. For instance, Okoli states in his declaration that Biddle not only made animal noises in reference to Okoli but encouraged others to do so as well. (ECF No. 50-1 at 22). Similarly, Biddle's diatribe about "fucking foreigners" buying up property was made in a full lunchroom. (*Id*. at 23). Birly would continue to shout insults at Okoli "until [Okoli] was out of sight." (*Id*. at 22). These were not private comments made to Okoli out of earshot of others; they were loud, boisterous exclamations made in crowded areas of the plant. Drawing all inferences in favor of Okoli, a reasonable juror could conclude that the conduct of Michelin's employees was "sufficiently obvious" to give Michelin constructive notice. *Renfroe*, 385 F.Supp.3d at 708.

11

If constructive knowledge is found, the Court has little trouble finding a question of fact as to whether Michelin took prompt and appropriate action to prevent future incidents of harassment. *Cerros*, 398 F.3d at 953. The designated evidence demonstrates that Michelin's intervention may have stopped harassment from Krupa, but whatever message was sent to Krupa appears not to have made it any further. Rather, according to Okoli, the harassment worsened, shifting from Krupa to Krupa's subordinates. Indeed, most of the explicitly racist comments seem to have come after Krupa's run-in with Michelin HR.

An employer's intervention needs not be 100% effective in order to satisfy legal requirements, but its efficacy is material in determining whether the action was "reasonably likely to prevent the harassment from reoccurring." *Cerros*, 398 F.3d at 954. If anything, Michelin's corrective action seems to have had the opposite of the intended effect. A reasonable juror, then, could conclude that Michelin was negligent in addressing the harassment by Okoli's coworkers.

**C.     Conclusion**

For the foregoing reasons, Michelin's Motion for Summary Judgment (ECF No. 39) is GRANTED in part and DENIED in part. Summary judgment is hereby entered in favor of Michelin and against Okoli on his wrongful termination and retaliation claims. Okoli's claim of a hostile work environment will remain pending.

SO ORDERED on September 24, 2020.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT